PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


CALIFORNIA PALMS ADDICTION,          )
RECOVERY CAMPUS, INC., *et al.*,     )     CASE NO.  4:22-CV-0812
                                     )
              Appellants,            )
                                     )
       v.                            )     JUDGE BENITA Y. PEARSON
                                     )
ANDREW R. VARA, UNITED               )
STATES TRUSTEE                       )     **MEMORANDUM OF OPINION**
                                     )     **AND ORDER**
              Appellee.              )     [Resolving ECF No. 4]



        Pending before the Court are Appellants California Palms Addiction Recovery Campus,

Inc. ("CPARC") and Sebastian Rucci's appeal from an oral order of the Bankruptcy Court (ECF

No. 15) and their Motion to Stay Pending Appeal (ECF No. 4).  Both matters are fully briefed.

After an examination of the briefs, exhibits, and the governing law, the Court determines that

oral argument is not needed.  The Court affirms the Bankruptcy Court's ruling converting the

matter to a Chapter 7 proceeding (Case No. 4:22-bk-40065, ECF No. 116 at Page 28[1]) and

denies Appellants' Motion to Stay Pending Appeal (ECF No. 4) as moot.

---

[1] All document references to the Bankruptcy Court docket are preceded by "Case
No. 4:22-bk-40065."  Otherwise, the referenced document is available on this Court's
docket or as indicated.

(4:22-CV-0812)

## I. Background and Procedural History

Appellants CPARC and Sebastian Rucci filed a Subchapter V, Chapter 11 bankruptcy petition[2] on January 30, 2022, the day before CPARC was scheduled to be evicted by its creditor, Pender Capital Asset Based Lending Fund, L.P. ("Pender Capital").  *See* Case No. 4:22-bk-40065, ECF No. 1.  Appellant CPARC formerly operated as a substance abuse disorder treatment facility, providing addiction recovery and mental health services to homeless veterans, uninsured citizens, and low-income Ohioans.[3]  ECF No. 15 at PageID #: 339.  Attorney Jeffrey C. Bogert is currently the primary legal counsel representing Appellant CPARC in this appeal.[4]  Appellant Sebastian Rucci, who is CPARC's President, CEO, and sole shareholder, is representing himself *pro se* in this appeal and, at the time of the Bankruptcy Court proceedings,

---

[2] A Subchapter V, Chapter 11 bankruptcy petition is geared towards small businesses.  Subchapter V of Chapter 11 of Title 11, 11 U.S.C. § 1181 to § 1195, streamlines the bankruptcy filing process and reduces costs for small business debtors.

[3] CPARC is currently a non-operating entity, although it continued to have volunteers working at its two locations while its bankruptcy case was pending.  ECF No. 18 at PageID #: 390; ECF No. 18-1 at PageID #: 527–29 (§ 341 Meeting Tr.).

[4] Since the commencement of this appeal, CPARC has been represented by multiple attorneys.  Initially, Attorney James A. Vitullo entered his appearance on behalf of CPARC in February 2022.  During the April 5, 2022 Motion to Convert hearing at issue in this appeal, the Bankruptcy Court granted Attorney James Vitullo's Motion to Withdraw as Counsel.  Subsequently, Attorney Steve Albenze entered his appearance on behalf of CPARC.  Although Attorney Steve Albenze has not formally withdrawn as counsel in this appeal, he verbally informed all parties that he is no longer representing CPARC.  In response to Attorney Albenze's unofficial withdrawal from this case, Attorney Jeffrey C. Bogert entered his appearance on behalf of CPARC in October 2022.

The UST raised a concern in its appellate brief that CPARC was not represented by legal counsel because Attorney Steve Albenze indicated that he had withdrawn.  The UST argued that the appeal should be dismissed as to CPARC if it continues to not be represented by legal counsel because an entity may not proceed *pro se*.  Because Attorney Jeffrey C. Bogert has entered his appearance as counsel for CPARC, the issue of lack of representation is moot.  Attorney Albenze's name, however, shall, hereby, be stricken from the docket.

2

(4:22-CV-0812)

was a licensed attorney.[5]  Appellee is the United States Trustee ("UST"), who oversees the administration of bankruptcy cases.

The events that gave rise to this appeal began long before Appellants filed their bankruptcy petition.  In 2019, CPARC's affiliate LLC filed two bankruptcy petitions that were both dismissed, one voluntarily and the other involuntarily because the Bankruptcy Court found that it was filed in bad faith as a litigation tactic to avoid orders entered against it.  ECF No. 18 at PageID #: 390–91.  In October 2021, the Department of Justice discovered that CPARC was improperly billing Medicaid for services it did not render and consequently seized $582,932.89 from CPARC on October 7, 2021.  *United States of America v. $582,932.89 in Funds Seized on October 7, 2021, From Farmers National Bank Account No. XXXX9874, Pursuant to the Execution of a Federal Seizure Warrant et al.*, No. 22-cv-00057 (N.D. Ohio).  On October 29, 2021, the Ohio Department of Mental Health and Addiction Services ("ODMHAS") revoked CPARC's license to provide services, prohibiting CPARC from "seeking Medicaid compensation for any services provided after" the date of revocation.  ECF No. 18 at PageID #: 393.  Appellants appealed the revocation, but in May 2022, the Ohio Court of Common Pleas affirmed the license revocation, holding that ODMHAS "'found serious problems at the facility, including rule violations, impacting clients' health and safety'."  ECF No. 18 at PageID #: 392–93 (quoting *California Palms Addiction Recovery Campus, Inc. v. Ohio Dep't of Mental Health and Addiction Services*, Mahoning C.P. No. 2021-CV-01838 (May 12, 2022)).

---

[5] *See* ECF No. 18-1 at PageID #: 516 (§ 341 Meeting Tr.); Case No. 4:22-bk-40065, ECF No. 116 at Page 29.

3

(4:22-CV-0812)

In its Chapter 11 bankruptcy petition filed on January 30, 2022, Appellant CPARC claimed to have $872 in cash, $597,904.64 in two separate checking accounts that were seized by the Department of Justice, $500,000 prepayment to Pender Capital to secure a purchase of property, $86,572 in accounts receivable, $873,053 worth of office furniture, fixtures, and equipment, two vehicles with a combined value of $7,500, and $500,000 investment in a Summerfield treatment center.  Case No. 4:22-bk-40065, ECF No. 1-3.  CPARC's real and personal property assets totaled $3,164,678.28.  Case No. 4:22-bk-40065, ECF No. 1-3 at Page 8. A week after Appellants filed for bankruptcy, Pender Capital "moved for automatic relief from the automatic stay to allow it to evict [CPARC]" and sought either an "appointment of a trustee under 11 U.S.C. § 1185(a) or conversion of Appellants' case to one under Chapter 7, to avoid further evasion and misconduct" by Appellant Sebastian Rucci.  ECF No. 18 at PageID #: 394. The Bankruptcy Court granted Pender Capital's motion for relief from the automatic stay on March 15, 2022.  Case No. 4:22-bk-40065, ECF No. 118 at Page 17–19.

On February 18, 2022, the UST filed a Motion to Convert Appellants' bankruptcy case from a Chapter 11 to a Chapter 7 case for cause pursuant to 11 U.S.C. § 1112(b)(4) of the Bankruptcy Code.  Case No. 4:22-bk-40065, ECF No. 35.  On March 10, 2022, the UST held a § 341 meeting[6] in which Appellant Rucci testified about CPARC's financial affairs under penalty of perjury.  Most relevant was Appellant Rucci's testimony indicating that at the time of this meeting, Appellants still had not opened a debtor-in-possession account.  ECF No. 18-1 at

---

[6] 11 U.S.C. § 341 requires that the United States Trustee convene and preside at a meeting of creditors.  Equity security holders are also permitted to attend this meeting.  The court, however, is not allowed to attend this meeting.  A § 341 meeting must be held within a reasonable time after the order for relief in a case under Title 11 of the Bankruptcy Code.

4

(4:22-CV-0812)

PageID #: 586 (§ 341 Meeting Tr.).  At the conclusion of the § 341 meeting, the UST

specifically requested bank statements from CPARC for the relevant time period.  ECF No. 18-1

at PageID #: 588 (§ 341 Meeting Tr.).

 The Bankruptcy Court held a hearing on March 15, 2022 ("Initial Conversion Hearing")

to address the UST's Motion to Convert.  The Bankruptcy Court reserved making a final ruling

on the Motion to Convert during the hearing but verbally ordered that Appellants comply with

the UST's request for bank records within 14 days of the hearing.  Case No. 4:22-bk-40065, ECF

No. 118 at Page 31.  The next day, the Bankruptcy Court issued a written order on March 16,

2022, memorializing the instructions it gave during the hearing.  On March 31, 2022, the UST

filed an affidavit informing the Bankruptcy Court that Appellants failed to comply with the

UST's request.  Case No. 4:22-bk-40065, ECF No. 80.  Although Appellants had finally opened

a debtor-in-possession account and provided a spreadsheet of financial transactions for their

Peoples Bank account, the spreadsheet was not supported by any bank statements or records and

was redacted in some parts.  Case No. 4:22-bk-40065, ECF No. 80.  The Bankruptcy Court held

another hearing on April 5, 2022 ("Final Conversion Hearing"), during which it granted the

UST's Motion to Convert the case from Chapter 11 to Chapter 7.  Following the Bankruptcy

Court's conversion order, Pender Capital filed a proof of claim for $1.106 million.

 On April 19, 2022, Appellants CPARC and Sebastian Rucci timely filed their notice of

appeal and statement, electing to appeal in district court rather than the Bankruptcy Appellate

Panel.  Case No. 4:22-bk-40065, ECF No. 104.[7]  The matter is fully briefed.

---

 [7] Appellants' Notice of Appeal was docketed on this Court's docket on May 18,
2022.  *See* ECF No. 1.

(4:22-CV-0812)

Appellants filed a Motion to Stay Pending Appeal on June 7, 2022.  ECF No. 4.  This matter is also fully briefed.

## II. Standard of Review

The Court reviews the Bankruptcy Court's decision to convert Appellants' Chapter 11 case for abuse of discretion by "applying the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law." *In re Madaj*, 149 F.3d 467, 468 (6th Cir. 1998) (quoting *In re Century Boat Co.*, 986 F.2d 154, 156 (6th Cir. 1993)); *see also In re Lee*, 467 B.R. 906, 911 (B.A.P. 6th Cir. 2012).  "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Kaye v. Agripool, SRL*, 392 B.R. 288 (B.A.P. 6th Cir. 2008).  Clear error is present when the Court holds a "definite and firm conviction that a mistake has been committed. If there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *In re Mitan*, 573 F.3d 237, 241 (6th Cir. 2009) (citing *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003)).  Absent clear error, there cannot be a finding of an abuse of discretion, and the Bankruptcy Court's decision will be upheld.  *See In re AMC Mortg. Co., Inc.*, 213 F.3d 917, 920 (6th Cir. 2000).  With regard to a *de novo* standard of review for conclusions of law, the Court must decide issues "independently of, and without deference to, the trial court's determination." *In re Morton*, 410 B.R. 556, 559 (B.A.P. 6th Cir. 2009) (quoting *Menninger v. Accredited Home Lenders*, 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007)).

## III. Discussion

Appellants appeal the Bankruptcy Court's order converting their Chapter 11 case to a Chapter 7 case, arguing that the Bankruptcy Court erred and abused its discretion in

6

(4:22-CV-0812)

doing so.   At the conclusion of the Final Conversion Hearing, the Bankruptcy Court ordered the conversion to Chapter 7 and orally explained its reasoning for the conversion. The Bankruptcy Court stated that Appellants' "failure to satisfy the request of the U.S. Trustee, the failure [of Appellant] to comply with the Court's order, . . . the absence of a reasonable ability to rehabilitate in a reasonable amount of time, . . . and . . . concerns about management" are all valid causes for conversion pursuant to § 1112(b).  Case No. 4:22-bk-40065, ECF No. 116 at Page 28.  Appellants assert four main arguments on appeal: 1) that the Bankruptcy Court lacked cause to convert the Chapter 11 case to a Chapter 7 case; 2) the Bankruptcy Court violated Appellants' due process rights; 3) even if the Bankruptcy Court had cause, it abused its discretion by not considering dismissal of the case instead of conversion; and 4) the conversion violated Subchapter V of Chapter 11 protections.

### A.  Lack of Cause Under § 1112(b)

The Bankruptcy Court, on request of a party in interest and for cause, can convert or dismiss a Chapter 11 case, whichever is in the best interests of creditors and the estate.  *See* 11 U.S.C. § 1112(b)(1).  The party seeking to convert or dismiss a Chapter 11 case has the burden of demonstrating by a preponderance of evidence that the Bankruptcy Court has cause to do so. *In re Creekside Sr. Apartments, L.P.*, 489 B.R. 51, 60 (B.A.P. 6th Cir. 2013).  A single ground for cause is sufficient to justify the "for cause" portion of 11 U.S.C. § 1112(b)(1).  *Id.*  11 U.S.C. § 1112(b)(4) provides a list of causes that the Bankruptcy Court can lean on when deciding to convert or dismiss a Chapter 11 case, including, for example, "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;" "gross mismanagement of the estate;" "failure to comply with an order of the court;" and "failure timely

7

(4:22-CV-0812)

to provide information or attend meetings reasonably requested by the United States trustee (or

the bankruptcy administrator, if any)".  11 U.S.C. §§ 1112(b)(4)(A), (B), (E), (H).

Importantly, 11 U.S.C. § 1112(b)(2) restrains the Bankruptcy Court from converting or

dismissing a Chapter 11 case when

> The [Bankruptcy Court] finds and specifically identifies unusual
> circumstances establishing that converting or dismissing the case is
> not in the best interests of creditors and the testate, and the debtor
> or any other party in interest establishes that
> (A) there is a reasonable likelihood that a plan will be confirmed
> within the timeframes established in sections 1121(e) and 1129(e)
> of this title, or if such sections do not apply, within a reasonable
> period of time; and
> (B) the grounds for converting or dismissing the case include an
> act or omission of the debtor other than under paragraph (4)(A)--
> (i) for which there exists a reasonable justification for the act or
> omission; and
> (ii) that will be cured within a reasonable period of time fixed by
> the court.

11 U.S.C. § 1112(b)(2).

As earlier stated, the Bankruptcy Court determined that cause for conversion has been

shown under 11 U.S.C. § 1112 on the grounds of "the [Appellants'] failure to satisfy the request

of the U.S. Trustee, the [Appellants'] failure to comply with the Court's order, . . . the absence of

a reasonable ability to rehabilitate in a reasonable amount of time is present here and . . . that

there is concerns about the management here."[8]  Case No. 4:22-bk-40065, ECF No. 116 at Page

---

[8] The best rendering of the Bankruptcy Court's ruling is found at 2022 WL 2116643, an omnibus decision issued ruling on four motions, including a motion to alter or amend the conversion ruling.  *See In re California Palms Addiction Recovery Campus, Inc.*, No. 22-40065, 2022 WL 2116643 (Bankr. N.D. Ohio June 10, 2022).  While issued after the Final Conversion Hearing ruling, it is consistent with the reasoning the bankruptcy judge gave orally, responsive to Appellant's arguments raised herein, and of assistance in this appellate review.

(4:22-CV-0812)

28.  Appellants argue that such findings were insufficient to satisfy the "for cause" requirement of 11 U.S.C. § 1112.

### i. 11 U.S.C. §§ 1112(b)(4)(E) and (H)

Appellants found fault with the Bankruptcy Court's order citing cause to convert under 11 U.S.C. §§ 1112(b)(4)(E) and (H)[9] because, they argue, that they satisfied the UST's request and the Court's March 16, 2022 order (Case No. 4:22-bk-40065, ECF No. 76).[10]  In that order, the Bankruptcy Court required Appellants to "[p]rovide to the Office of the U.S. Trustee an accounting of all post-petition bank transactions, including all deposits, withdrawals or other transfers, on or before March 30, 2022."  Case No. 4:22-bk-40065, ECF No. 76.  In the same order, the Bankruptcy Court warned Appellants that their failure to comply with this order would permit the UST to file an affidavit informing the Bankruptcy Court of Appellants' noncompliance and allow the Bankruptcy Court to rule on UST's Motion to Convert.  Case No. 4:22-bk-40065, ECF No. 76.  The day before issuing this written order, the Bankruptcy Court verbally instructed Appellants that they were to provide more transparency regarding all the

---

[9] 11 U.S.C. § 1112(b)(4)(E) states, "For the purposes of this subsection, the term 'cause' includes failure to comply with an order of the court."  11 U.S.C. § 1112(b)(4)(H) states, "For the purposes of this subsection, the term 'cause' includes failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any)."

[10] Appellants also assert that 11 U.S.C. §§ 1112(b)(4)(E) and (H) were not cited in the UST's Motion to Convert, so the Bankruptcy Court should not have relied upon these causes.  11 U.S.C. § 1112(b)(2) does not restrict the Bankruptcy Court only to causes found in the requesting party's motion.  It merely requires that the Bankruptcy Court convert or dismiss a case "for cause."  11 U.S.C. § 1112(b)(2).  Furthermore, the causes under 11 U.S.C. §§ 1112(b)(4)(E) and (H) arose after the UST's Motion to Convert was filed.  By delaying its ruling, the Bankruptcy Court essentially gave Appellants a second chance after the Initial Conversion Hearing to convince the Bankruptcy Court not to convert their case.  Nevertheless, Appellants failed to comply with the Bankruptcy Court's orders.

(4:22-CV-0812)

transactions that had occurred since the filing of the bankruptcy petition.  The Bankruptcy Court explicitly warned Appellants during the Initial Conversion Hearing that "it's going to take very, very little for [the Bankruptcy Court] to find . . . that this case needs to be converted to Chapter 7."  Case No. 4:22-bk-40065, ECF No. 118 at Page 30.

Appellants argue that they satisfied the UST's request for accounting information by providing a spreadsheet of financial transactions.  ECF No. 15 at PageID #: 345–47.  The record disagrees.  Appellants provided the spreadsheet only after UST filed an affidavit informing the Bankruptcy Court that Appellants had not provided an accounting of any post-petition bank transactions.  Case No. 4:22-bk-40065, ECF No. 80.[11]  So even if Appellants eventually provided all of the requested information, they did not do so in accord with the Bankruptcy Court's order.   Additionally, the spreadsheet that Appellants provided had parts redacted, and the information provided was not supported by bank statements or records.  ECF No. 18 at PageID #: 401–402.  Consequently, even if a completed spreadsheet of transactions were sufficient to satisfy the UST's accounting request, Appellants' spreadsheet was incomplete given that it had parts redacted.  Finally, Appellants' claim that the first time that the UST argued for bank statements instead of accounting was during the Final Conversion Hearing is disingenuous.[12]  The Bankruptcy Court and the UST used the terms "bank statements," "bank records," and "accounting" interchangeably throughout the course of this litigation.  During the Initial Conversion Hearing, the Bankruptcy Court explicitly confirmed with Appellants whether

---

[11] That same day the bankruptcy judge issued an order for a Show Cause Hearing. Case No. 4:22-bk-40065, ECF No. 81.

[12] Appellants interpreted the request for "accounting" to be satisfied by a spreadsheet of transactions.  *See* ECF No. 15 at PageID #: 345–47.

(4:22-CV-0812)

they would be able to provide bank records to the UST.  Case No. 4:22-bk-40065, ECF No. 118 at Page 32 ("So you can go there and get the bank records from Peoples Bank of Summerfield and get those to the Office of the U.S. Trustee within 14 days, right?"  Appellant Rucci agreed: "Yes Your Honor.").  Despite the Bankruptcy Court's clear instructions and Appellant Rucci's assurances,[13] Appellants neither satisfied the UST's request nor the Bankruptcy Court's order. Thus, the Bankruptcy Court, relying on 11 U.S.C. §§ 1112(b)(4)(E) and (H), did not abuse its discretion by finding that Appellants' failure to comply with the UST's request and the Bankruptcy Court's order was cause to convert Appellants' Chapter 11 case to a Chapter 7 case.

### ii. 11 U.S.C. § 1112(b)(4)(A)

Appellants also argue that it was unjustified for the Bankruptcy Court to determine that it had cause to convert Appellants' Chapter 11 case pursuant to 11 U.S.C. § 1112(b)(4)(A).[14] Appellants contend that the Bankruptcy Court did not properly establish cause under 11 U.S.C. § 1112(b)(4)(A) because it only established that CPARC was unlikely to rehabilitate but failed to find that there was a continuing loss of estate as required pursuant to 11 U.S.C. § 1112(b)(4)(A). Contrary to Appellants' assertions, during the Initial and Final Conversion Hearings, the Bankruptcy Court cited CPARC's non-operating status, its lack of income since its license was revoked, and its lack of employees, all of which are indications of continuing loss under 11

---

[13] The bankruptcy judge continued by instructing: "And every dollar that comes in, whether it's by electronic transfer, check, bitcoin, whatever, is all going into the DIP account, starting now.  You understand [?]" Appellant Rucci, again, confirmed: "Starting Friday, Judge."  Case No. 4:22-bk-40065, ECF No. 118 at Page 32–33.

[14] 11 U.S.C. § 1112(b)(4)(A) states, "For purposes of this subsection, the term 'cause' includes substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."

(4:22-CV-0812)

U.S.C. § 1112(b)(4)(A).  Case No. 4:22-bk-40065, ECF No. 116 at Page 15; ECF No. 118 at Page 15–16.  Consequently, the Bankruptcy Court did not abuse its discretion in finding cause to convert Appellants' Chapter 11 case under 11 U.S.C. § 1112(b)(4)(A) due to the absence of a reasonable ability to rehabilitate.

### iii. 11 U.S.C. § 1112(b)(4)(B)

Appellants also found fault with the Bankruptcy Court's decision to convert on the basis of "gross mismanagement" of the estate pursuant to 11 U.S.C. § 1112(b)(4)(B).  ECF No. 15 at PageID #: 344; Case No. 4:22-bk-40065, ECF No. 116 at Page 28 (stating "there [are] concerns about the management here").  The record supports this concern.  CPARC failed to timely open a debtor-in-possession ("DIP") account as instructed by the UST, and instead, was improperly depositing funds into a third-party account for weeks after it filed its Chapter 11 petition.

Appellants argue that they ultimately opened a DIP account and that the UST even stated that "it's good news that a DIP account has been opened."  Case No. 4:22-bk-40065, ECF No. 118 at Page 10.  Appellants contend that because the UST and the Bankruptcy Court already acknowledged that it was "good news" that Appellants opened a DIP account, albeit delayed; the tardy opening of the DIP account cannot be used against Appellants as grounds for conversion rather than dismissal of Appellants' Chapter 11 case.

Although Appellants eventually opened a DIP account, that delayed action does not negate the concern created by how long (weeks) it took Appellants to do so.  Regardless of the reason for the delay in opening the DIP account, the UST and the Bankruptcy Court voiced shared concern that Appellants were inappropriately "commingling . . . estate funds with non-estate funds" prior to their opening of the DIP account.  Case No. 4:22-bk-40065, ECF No. 118

12

(4:22-CV-0812)

at Page 9.  To this end, the Bankruptcy Court expressed concern about Appellant Rucci using

funds that should have been kept separate in a DIP account to pay for his personal expenses.[15]

Case No. 4:22-bk-40065, ECF No. 116 at Page 17.

Parsing, Appellants claim that the Bankruptcy Court never referenced the term "gross",

as in gross mismanagement, in its findings.  The Bankruptcy Court was not required to use the

term "gross" to find that Appellants' failure to timely open a DIP account constitutes gross

management.  The concerns that the Bankruptcy Court articulated during the Final Conversion

Hearing, including the untimely opening of a DIP account and inappropriate intermingling of

funds, sufficiently establishes grounds for cause to convert under 11 U.S.C. § 1112(b)(4)(B),

notwithstanding Appellants' excuses.  The Bankruptcy Court, therefore, did not abuse its

discretion by finding gross mismanagement as cause to convert Appellants' Chapter 11 case

under 11 U.S.C. § 1112(b)(4)(B).

### B.  Due Process Violations

Appellants claim that the Bankruptcy Court violated their due process rights by 1)

relying on the UST's patently defective Motion to Convert, 2) delaying the Motion to

Convert hearing instead of dismissing the UST's motion on March 15, 2022, 3) failing to

provide enough advance notice of the Final Conversion Hearing, and 4) allowing Appellant

CPARC's attorney to withdraw before proceeding with the Final Conversion Hearing,

leaving Appellant CPARC without legal counsel.  *See* ECF No. 15 at PageID #: 358–60.

---

[15] "[T]here's been a mixing of funds here in the history of this case, where, you know[]while Mr. Rucci hasn't taken a salary, he's used those monies for his personal living expenses."  Case No. 4:22-bk-40065, ECF No. 116 at Page 17.

(4:22-CV-0812)

The Court reviews the question of whether the Bankruptcy Court committed a due process violation *de novo*.  *In re Haffey*, 576 B.R. 540, 543 (B.A.P. 6th Cir. 2017).  "[T]o prevail on a procedural due process challenge, [Appellants] must . . . establish the requisite prejudice [by] show[ing] that the due process violations led to a substantially different outcome from that which would have occurred in the absence of those violations."  *Id.* at 549 (citing *Graham v. Mukasey*, 519 F.3d 546, 549–50 (6th Cir. 2008)).  " 'The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion.' "  *In re Behlke*, 358 F.3d 429, 438 (6th Cir. 2004) (quoting *In re Eagle-Picher Indus., Inc.*, 285 F.3d 522, 529 (6th Cir. 2002)).

### i. Improper Basis for the UST's Motion to Convert

Appellants argue that because the UST's Motion to Convert is patently defective, the Bankruptcy Court's reliance on this motion violated Appellants' due process rights.  According to Appellants, the UST's Motion to Convert is "patently defective" because it is based on the false assumption that Appellants made unauthorized post-petition deposits.  ECF No. 15 at PageID #: 359.  One of the concerns that the UST lists in its motion is that "the Debtor presumably has continued to deposit its only source of funds into a non-debtor entity's bank account post-petition."  Case No. 4:22-bk-40065, ECF No. 35 at Page 6.  This, however, is just one of many arguments that the UST made in its motion to support conversion.  It was neither the sole basis, nor the primary reasoning for the UST's request to convert Appellants' case.  Rather, the UST's Motion provides multiple reasons that support a finding that Appellants are facing a "continuing loss of the estate," lack a "reasonable likelihood of rehabilitation," and

14

(4:22-CV-0812)

demonstrate "gross mismanagement" of the estate.  Case No. 4:22-bk-40065, ECF No. 35 at Page 6–7.  In its motion, the UST further elaborates that "conversion, not dismissal, is appropriate" because of Appellants' "lack of operations and income on account of the revocation of its license," "use of a third-party entity's bank account placing assets outside the scope of creditors post-petition, and history of bankruptcy litigation.  Case No. 4:22-bk-40065, ECF No. 35 at Page 7.

Because the UST provides myriad reasons to support its Motion to Convert, Appellants' claim that the UST's Motion to Convert is defective because of its reliance on a false factual presumption is without merit.  It is also worth noting that in addition to considering the UST's Motion, the Bankruptcy Court also considered Appellants' testimony during the Initial and Final Conversion Hearings to determine whether valid causes supported conversion.  *See e.g.*, Case No. 4:22-bk-40065, ECF No. 116 at Page 6–13, 17–20; ECF No. 118 at Page 19–26.  As indicated earlier in this writing, the Bankruptcy Court, in accordance with due process, properly cited several causes that correspond with causes listed under 11 U.S.C. § 1112(b)(4).  Case No. 4:22-bk-40065, ECF No. 116 at Page 28.  Appellants' argument that the Bankruptcy Court's improper reliance on the UST's motion violated Appellants' due process rights is, therefore, unjustified.

### ii. Improper Continuance of Motion to Continue Hearing

Appellants also take issue with the Bankruptcy Court holding the UST's Motion to Convert in abeyance rather than denying it during the Initial Conversion Hearing.  ECF No. 15 at PageID #: 359; ECF No. 27 at PageID #: 899.  The Bankruptcy Court's delay in resolving the Motion to Convert, according to Appellants, was a tactic "used to impose new criteria, not found

15

(4:22-CV-0812)

in any of the other sixteen factors Congress provided in § 1112(b)(4)."  ECF No. 27 at PageID #: 899.  This is a meritless argument.

At the threshold, the undersigned earlier determined, the UST's motion was not defective.  The record reflects that the Bankruptcy Court's decision to delay its resolution of the UST's Motion to Convert was appropriately made with the consideration of both parties' positions and not grounded in any desire to impose criteria conjured up by the Bankruptcy Court.  During the Initial Conversion Hearing, Appellant Rucci encouraged a continuance by suggesting that he believed the outcome of the related district court litigation could affect the likelihood of rehabilitation for CPARC.  This implied that the outcome of the related district court matter could impact the Bankruptcy Court's decision regarding the Motion to Convert.  Case No. 4:22-bk-40065, ECF No. 118 at Page 25.   The UST concurred that the extent of progress in the related litigation pending in other courts could factor into how quickly the Bankruptcy Court makes a decision on the motion.  Case No. 4:22-bk-40065, ECF No. 118 at Page 35–36.  The Bankruptcy Court's agreement with counsel encourages deference not suspicion.  Appellants' due process rights were not violated by the Bankruptcy Court's decision on March 15, 2022 to continue the Motion to Convert hearing before ruling.  There is nothing violative about the court and counsel wanting to be better informed than it was at the earlier time.

### iii. Inadequate Notice of Conversion Hearing

Appellants argue that their due process rights were violated when the Bankruptcy Court conducted the Motion to Convert hearing with only five days' notice to the Appellants.   Although Federal Bankruptcy Rule of Procedure 2002(a)(4) provides that courts should give at least 21 days' notice by mail of a "hearing on the dismissal of the

16

(4:22-CV-0812)

case or the conversion of the case to another chapter," Fed. R. Bankr. P. 9006(c)(1) allows the Court the discretion to reduce the notice period "with or without motion or notice." Pursuant to Fed. R. Bankr. P. 9006(c)(1), the Bankruptcy Court has the discretion to shorten the standard rule of 21 days' notice if it shows cause to do so. The Bankruptcy Court notified the parties of the Motion to Convert hearing by issuing its Order for Show Cause Hearing on March 31, 2022. This order was issued in response to a declaration from the UST that Appellants had failed to comply with the Bankruptcy Court's March 16, 2022 order requesting that Appellants provide the UST with an accounting of all post-petition bank transactions. Case No. 4:22-bk-40065, ECF No. 81. In the Bankruptcy Court's March 31 order, it specified that the reason for the hearing was due to Appellants' non-compliance with the Bankruptcy Court's March 16 order. Case No. 4:22-bk-40065, ECF No. 81.

Furthermore, Appellants were on notice of the possibility of this Final Conversion Hearing occurring long before they received formal notice. The UST filed its Motion to Convert on February 18, 2022. During the Initial Conversion Hearing, the Bankruptcy Court clearly instructed Appellant Rucci "get the bank records from the Peoples Bank of Summerfield and get those to the Office of the U.S. Trustee within 14 days," and Appellant Rucci confirmed his understanding of this instruction. Case No. 4:22-bk-40065, ECF No. 118 at Page 32. Following the hearing, the Bankruptcy Court issued a written order on March 16, 2022 warning Appellants that should they fail to comply with the Bankruptcy Court's order to provide an "accounting of all post-petition bank transactions, including all deposits, withdrawal, or other transfers," the UST may file an affidavit informing the

17

(4:22-CV-0812)

Bankruptcy Court about Appellants' noncompliance and the Bankruptcy Court reserved the authority to subsequently rule on the Motion to Convert. [16]  Case No. 4:22-bk-40065, ECF No. 76.  This March 16 order certainly gave Appellants notice that should they fail to comply, they were at risk of facing the consequences of the Bankruptcy Court's decision on the Motion to Convert.  Even if the Bankruptcy Court were to have delayed the Motion to Convert hearing for another 16 days to formally make it a 21-day notice, based on the case history and the facts of the case, a reasonable person could agree with the Bankruptcy Court's decision to convert the case.  Because Appellants have not established that they would have otherwise prevailed on their due process violation claim, the Court finds that the Bankruptcy Court did not abuse its discretion in this context or, in the alternative, committed a harmless error.

### iv. Proceeding with the Hearing When CPARC Was Without Counsel

Appellants argue that they were denied due process when the Bankruptcy Court granted Attorney James Vitullo's Motion to Withdraw as Counsel before hearing the parties on the Motion to Convert.  The Sixth Circuit rule "is that a corporation cannot appear in federal court except through an attorney." *Doherty v. Am. Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984).  Additionally, given its status as a debtor-in-possession, Appellant CPARC cannot be represented by just any attorney, but rather it must be represented by a disinterested person pursuant to 11 U.S.C. § 327.

---

[16] Prior to issuing its written order on March 16, 2022 and its formal notice on March 18, 2022, the Bankruptcy Court cautioned Appellant that it "may rule on the Motion to Convert" if the UST files an affidavit informing the court of the DIP's failure to comply with it orders.  *See* Case No. 4:22-bk-40065, ECF No. 71.

(4:22-CV-0812)

The sequence of events at the Final Conversion Hearing, Appellants contend, left Appellant CPARC without legal representation, and therefore, unable to defend itself during the Motion to Convert portion of the hearing.  During this hearing, the Bankruptcy Court addressed the Motion to Withdraw first and none of the parties objected to the Bankruptcy Court's granting of Attorney Vitullo's Motion to Withdraw as Counsel.  *See* Case No. 4:22-bk-40065, ECF No. 116 at Page 3–4.  In fact, the Bankruptcy Court specifically asked Appellant Rucci if he had any objections to the granting of Attorney Vitullo's Motion and Appellant Rucci explicitly stated on the record that that he had no objections.  Case No. 4:22-bk-40065, ECF No. 116 at Page 3–4.

Now Appellants imply that had Appellant Rucci realized that the Bankruptcy Court was going to engage in issues outside of the written motion, Appellant Rucci would *perhaps* have objected to Attorney Vitullo's withdrawal at the beginning of the Final Conversion Hearing.  ECF No. 15 at PageID #: 360; ECF No. 27 at PageID #: 901.  In actuality, Appellants were properly made aware of all the issues that the Bankruptcy Court covered well in advance of the Final Conversion Hearing, making Appellants' argument that they were surprised by any of the issues raised during the Final Conversion Hearing not credible.

During the Initial Conversion Hearing, at which Appellant Rucci and Attorney Vitullo were both present, the UST raised concerns about Attorney Vitullo's qualifications pursuant to 11 U.S.C. § 327 to represent Appellant CPARC.  Specifically, the UST claimed that Attorney James Vitullo was not a disinterested party because he previously represented Appellant Rucci in his personal capacity, represented Appellant CPARC's affiliates in the

19

(4:22-CV-0812)

past, and served as Appellant Rucci's co-counsel.  Case No. 4:22-bk-40065, ECF No. 118 at Page 41–42.  The UST also noted that during the § 341 meeting, Appellant Rucci stated that Attorney Vitullo's legal fees were paid using the funds from the third-party account associated with Appellants.  Case No. 4:22-bk-40065, ECF No. 118 at Page 42.  Attorney Vitullo did not deny any of these allegations which implied that he was disqualified to represent Appellant CPARC under 11 U.S.C. § 327.  The Bankruptcy Court responded to the UST's allegations by ordering Attorney Vitullo to supplement his application to be employed under 11 U.S.C. § 327 with further details about his involvement with previous litigation matters that involved Appellant CPARC.  In the same breath, the Bankruptcy Court also urged Attorney Vitullo to "take a look at the case law, and if [he did not] have a viable argument for remaining as counsel, then consider that, and what [his] appropriate action would be there."  Case No. 4:22-bk-40065, ECF No. 118 at Page 43.  Attorney Vitullo affirmed that he would comply with the Bankruptcy Court's order during the Initial Conversion Hearing.  Case No. 4:22-bk-40065, ECF No. 118 at Page 45.  On April 3, 2022, Attorney James Vitullo filed his Motion to Withdraw.

Until the moment that the Bankruptcy Court granted Attorney James Vitullo's Motion to Withdraw during the Final Conversion Hearing, Attorney Vitullo was the counsel of record representing Appellant CPARC.  Appellants now argue that, after Attorney Vitullo's motion to withdraw was granted, the Bankruptcy Court broached topics that Appellant Rucci was not prepared to respond to, implying that Appellant CPARC would have benefitted from the presence of active legal counsel during the Motion to Convert portion of the Final Conversion Hearing.

20

(4:22-CV-0812)

The Bankruptcy Court's misstep in granting Attorney Vitullo's Motion to Withdraw prior to hearing arguments on the UST's Motion to Convert is not overlooked by the undersigned.  Nonetheless, Appellant Rucci's prominent role in this bankruptcy case cannot be overstated.  He, as owner, President, and sole equity holder, was responsible for ensuring CPARC complied with the Bankruptcy Court's order and the UST's requests. Even if Attorney Vitullo had continued to represent Appellant CPARC during the Motion to Convert hearing, the person who would have been best able to explain the noncompliance with the Bankruptcy Court's order and the UST's request was and remained none other than Appellant Rucci.

Although Appellant CPARC did not have qualified legal counsel during the balance of the Final Conversion Hearing, the reality is that Appellants Rucci and CPARC would have presented very similar, if not identical, defenses and arguments because they are one and the same.  In other words, Appellant Rucci is CPARC's *alter ego*.  To determine whether an individual is the *alter ego* of a company in the context of piercing the corporate veil, the Court assesses factors including:

> (1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s).

*Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005).  These factors are neither exclusive nor exhaustive.  *Id.*  Given that Appellant Rucci, the owner, President, and sole equity shareholder of Appellant CPARC, was inextricably intertwined with CPARC

21

(4:22-CV-0812)

operations, he is Appellant CPARC's alter ego. CPARC is in a state of financial disarray given its bankruptcy petition filing and its inability to pay all of its creditors, despite Appellant Rucci's claims otherwise. Additionally, the accounting spreadsheet Appellant Rucci provided in a futile attempt to satisfy the UST request for CPARC's post-petition transfers from non-DIP accounts included many of Appellant Rucci's personal transactions such as "mortgage payments, convenience store purchases, groceries, fast food, et cetera." Case No. 4:22-bk-40065, ECF No. 116 at Page 5. It is clear that Appellant Rucci is the primary decisionmaker on behalf of CPARC.[17] All of these factors warrant piercing the corporate veil and finding that Appellant Rucci is CPARC's *alter ego*.

Considering Appellant Rucci's *alter ego* status, Appellants' arguments do not persuade the Court that a different conclusion would have been reached had the Bankruptcy Court granted Attorney Vitullo's Motion to Withdraw after the Motion to Convert had been fully addressed. A reasonable person could agree with the Bankruptcy Court's ultimate decision to convert Appellants' Chapter 11 case. In fact, the lack of qualified counsel, alone, encouraged conversion. The Court finds that, although it would have been procedurally proper for the Bankruptcy Court to have addressed the Motion to Convert

---

[17] This is also evident based on Appellant Rucci's response to the Bankruptcy Court's granting of Attorney Vitullo's Motion to Withdraw as Counsel. Appellant Rucci responded by taking on the responsibility of finding qualified counsel to replace Attorney Vitullo. Case No. 4:22-bk-40065, ECF No. 116 at Page 4 ("I have no objection, Judge. I'll have to find somebody.").

22

(4:22-CV-0812)

prior to granting Attorney James Vitullo's Motion to Withdraw, such a breach of due process, in light of all other circumstances, was harmless error.[18]

## C.  Conversion Without Consideration of Dismissal

Appellants argue that, even if the Bankruptcy Court found cause under 11 U.S.C. § 1112(b), the Bankruptcy Court erred when it did not consider dismissal before finally deciding to convert Appellants' Chapter 11 case to a Chapter 7 case.

"The decision to dismiss or convert a Chapter 11 case is within the sound discretion of the Bankruptcy Court and is reviewed only for an abuse of that discretion." *In re Mitan*, 573 F.3d 237, 247 (6th Cir. 2009) (quoting *Cain P'ship Ltd. v. Pioneer Inv. Servs. Co*, 21 F.3d 428, 1994 WL 134683, at *6 (6th Cir. 1994)).  11 U.S.C. § 1112(b) provides that "on request of a party in interest, after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause."  In relation to the case at bar, although 11 U.S.C. § 1112(b) requires the Bankruptcy Court to make a finding as to why conversion rather than dismissal would be in the best interests of creditors and the estate, it does not require that the Bankruptcy Court explicitly state reasons for why dismissal is less optimal than conversion.

---

[18] The Court also does not overlook Attorney Vitullo's possible disqualification due to being an interested party.  While that was suggested, it was not determined by the Bankruptcy Court because Attorney Vitullo resigned before the court below could decide that issue.  This issue, however, is overborne by the rationale that Appellant Rucci, a licensed attorney, at the relevant time, was the best and perhaps only source of knowledge for matters regarding CPARC.  He remained available to the court below after Attorney Vitullo's withdrawal.

(4:22-CV-0812)

  Appellants argue that dismissal, rather than conversion, of the case is in the best interests of the creditors and the estate and that the Bankruptcy Court did not even consider dismissing the case.  Contrary to Appellants' position, the Bankruptcy Court stated on the record during the Initial Conversion Hearing that it had considered dismissal but did not think that doing so would be "in anyone's best interest at this point" given the circumstances.  Case No. 4:22-bk-40065, ECF No. 118 at Page 28.  During the Final Conversion Hearing, the Bankruptcy Court noted that conversion of the case would be beneficial to the creditors while recognizing that such a decision would also be detrimental to the Chapter 7 Trustee recovering any monies.  Case No. 4:22-bk-40065, ECF No. 116 at Page 16.  When considered together, these facts indicate that the Bankruptcy Court gave proper consideration to weighing conversion against dismissal before making its ultimate decision.

  Appellants also argue that conversion is not in the best interest of creditors or the estate, particularly because the seized funds would unlikely be covered by a Chapter 7 trustee.  ECF No. 15 at PageID #: 352, 354.  Relevant to this claim, Appellants also allege that the UST blocked their "consensual" payment plan, which should be approved pursuant to 11 U.S.C. § 1191(a).  Had this plan been approved, Appellants urge that dismissal would have been the more appropriate resolution to allow Appellants to pay the creditors because (Appellants allege) that their unseized cash assets, which they claimed exceeded their debts, could have been used to pay off the creditors.  11 U.S.C. § 1191(a) states that the Bankruptcy Court "shall confirm a plan under this subchapter only if all of the requirements of section 1129(a), other than paragraph (15) of that section, of this title are met."  The

(4:22-CV-0812)

UST retorts that Appellants are incorrect because the record shows that Appellants' liabilities exceeded their cash assets.  ECF No. 18 at PageID #: 425.

Regardless, the Initial and Final Conversion Hearing transcripts make it clear that the Bankruptcy Court weighed the impact of conversion against that of dismissal before making its decision.  Therefore, the court below did not abuse its discretion by deciding to convert Appellants' Chapter 11 case to a Chapter 7 case rather than dismiss it.

### D.  Subchapter V of Chapter 11 Violations

Appellants argue that the Bankruptcy Court violated the Bankruptcy Code's Subchapter V of Chapter 11 by converting their case on the basis of an erroneous interpretation and application of the Bankruptcy Code.  ECF No. 15 at PageID #: 363–65.  Subchapter V of Chapter 11, titled Small Business Debtor Reorganization, includes 11 U.S.C. § 1181 to § 1195, and it is intended to streamline the bankruptcy filing process and reduce costs for small business debtors.[19]  11 U.S.C. § 1181 provides a list of sections of the Bankruptcy Code that do not apply to cases under Subchapter V.  11 U.S.C. § 1112 is not listed as an inapplicable section under Subchapter V; thus, it remains applicable to Subchapter V cases.

Appellant Sebastian Rucci filed for a Subchapter V Chapter 11 bankruptcy as a small business owner on January 30, 2022.  In their appeal, Appellants specify that the Bankruptcy Court erred by agreeing with UST that "the lack of operations and lack of employees precluded reorganization," that litigations funds are precluded from funding the plan, and that the

---

[19]  *See  Chapter  11 – Bankruptcy  Basics*,  United  States  Courts, https://www.uscourts.gov/services-forms/bankruptcy/bankruptcy-basics/chapter-11-bankruptcy-basics (last visited Mar. 27, 2023).

(4:22-CV-0812)

unsecured creditors are prioritized above equity holders.  ECF No. 15 at PageID #: 364–65; ECF No. 27 at PageID #: 907.  These determinations, Appellants contend, are in conflict with the protections that Subchapter V affords to Appellants.  Moreover, Appellants emphasize that "Subchapter V permits owners to retain their equity interests, even if unsecured creditors are not paid in full," thus, Subchapter V would protect Appellant Rucci's interests as an equity holder over that of unsecured creditors, like Pender Capital.  ECF No. 27 at PageID #: 905; *see also* ECF No. 15 at PageID #: 364.

Appellants' arguments are grounded in the mistaken belief that Subchapter V shields them from being subject to 11 U.S.C. § 1112.  It is clear from the statutory text of Subchapter V that 11 U.S.C. § 1112 applies to Subchapter V, Chapter 11 cases, including Appellants' case.  The Bankruptcy Court, therefore, did not abuse its discretion when converting Appellants' Subchapter V, Chapter 11 case to a Chapter 7 case because the Subchapter V protections do not prevent the Bankruptcy Court from converting Appellants' case for cause pursuant to 11 U.S.C. § 1112.

### IV. Conclusion

Finding that the Bankruptcy Court did not commit clear error or, in the alternative, committed harmless error, and did not abuse its discretion when converting Appellants' Subchapter V, Chapter 11 case into a Chapter 7 case, the Court affirms the Bankruptcy Court's order.  Appellants' Motion to Stay Pending Appeal (ECF No. 4) is denied as moot.

IT IS SO ORDERED.

March 27, 2023
Date

/s/ Benita Y. Pearson
Benita Y. Pearson
United States District Judge

26